GILBERT C. WHITE COMPANY v. CITY OF HICKORY.

(Filed 31 January, 1928.)

1. **Municipal Corporations—Public Improvements—Contracts— Cities and Towns.**

   Where, by provision of statute it is required that a contract to be binding upon a city, be signed in its behalf by its manager and by a member of its council, and that the contract be duly authorized by ordinance at a regular meeting: *Held,* a contract coming within these provisions, but signed only by its manager, without the signature of a member of the council, under authority of an ordinance so authorizing him to sign, is not void for nonconformance with the statute.

2. **Same.**

   Where a city has accepted the proposition of an engineer to prepare plans and specifications for, and supervise the construction of an enlargement of its water supply to meet its demands thereon, upon a commission basis that will require payment for supervision at stated intervals during the progress of the work, the completion of which will extend the period beyond one year, the contract is to be regarded as a continuing one by interpretation of the law and provision of the statute applicable in this case.

3. **Same.**

   Where there is express provision of a statute requiring a city in case of making a contract for its fiscal year to make an appropriation for its expenditures thereunder, and as to other contracts, the funds be available when they are executed: *Held,* that when such contract is made to extend beyond the fiscal year, and is a continuing contract, the statute, by its expressed terms, does not apply, and the contract is valid without an appropriation first made.

CIVIL ACTION, before *McElroy, J.,* May Term, 1927, of CATAWBA.

The plaintiff is a corporation organized and doing business under the law of North Carolina and is engaged in the business of furnishing

expert engineering services for the construction of water and power plants, street improvements, sewerage systems and other public works requiring expert engineering advice and supervision. The defendant, city of Hickory, owned a water plant "for the purpose of supplying an adequate water supply to its citizens and for extinguishing fires," and also for commercial purposes. The water plant was inadequate. Realizing the necessity of enlargement and repairs, the city council of defendant, on 1 December, 1922, sent out notices to various engineering firms, inviting proposals "from engineers for the purpose of employing an engineer to increase the city's water supply." In response to such notice various engineers submitted written proposals. The plaintiff submitted a proposal, dated 6 December, 1922, offering to "furnish engineering services on the work necessary to carry forward the work of construction to completion, including necessary studies, investigations and surveys of proposed sources of supply, and the preparation of all necessary maps, plans, specifications and drawings for submitting the work to contract and the direction of the work as consulting engineer." The compensation fixed in said proposal was as follows: "Our compensation for the above services shall be 4½% of the amounts that may be expended for waterworks (of which one-half is for plans and specifications and one-half for supervision of construction), and which shall be due and payable proportionately as the delivery of materials and the work of construction progresses. It is understood that we will first make the preliminary investigations and make a report to the council, and the charge for this investigation and report shall be the actual cost of making same (not exceeding $1,000), which said sum shall, however, be a part of our percentage fee." At a regular meeting of the city council of defendant, held 12 December, 1922, the foregoing proposal of the plaintiff was formally accepted by the mayor and city council. A resolution accepting same was duly passed, directing the city manager to sign the contract. Thereupon the plaintiff assembled its engineers to look over the ground and make all necessary preliminary investigations, studies, etc. This work proceeded until 10 May, 1923. On said date a special meeting of the city council of defendant was called "for the purpose of hearing Mr. Gilbert C. White, engineer, on the report of his firm for the proposed new gravity system of water for the city. After hearing Mr. White and a lengthy discussion on the different proposals of the report . . . it was moved . . . that the Gilbert C. White Company of Durham be instructed to prepare plans and specifications for the proposed gravity water supply for the city." Thereafter, on 15 May, 1923, the same resolution was again read and unanimously adopted. The work proceeded as before until 25 October, 1923. On said date a special meeting of the city council of defendant was held, and the minutes of

said meeting contained the following entry: "The Honorable Mayor stated that this special meeting was called for the purpose of hearing Mr. Gilbert C. White, engineer, of Durham, N. C., on the advisability of putting in gravity system of water supply for the city, also looking over the plans and specifications of same. After a lengthy discussion same was left over to a future date, and to notify Mr. White when it would be taken up." After the delivery of plans and specifications on 25 October, 1923, the matter of water improvement was discussed at a mass meeting in the defendant city. Said mass meeting was to be held on or about 14 November, 1923. On 8 February, 1924, the plaintiff was requested by the mayor of the defendant to make up an estimate, leaving out certain items in the original estimate, thus enabling the city to install the plant for less money than the original estimate of cost. The plaintiff complied with this request, and thereafter, on 21 March, 1924, prepared a condensed report which was printed in a newspaper published in the defendant city, the plaintiff having nothing to do with the publication thereof. On 4 October, 1924, the plaintiff wrote a letter to the defendant, enclosing a bill for services in the sum of $15,195.60, which was $2\frac{1}{4}\%$ of $657,360, said sum being the estimated cost of the proposed improvements. The defendant declined to pay the plaintiff anything on account of services rendered. The evidence tended to show that the plaintiff had actually spent $8,000 or $10,000 in preparing the plans and specifications and performing said services specified in the contract. The evidence further tended to show that it would have required from eighteen months to two years to have constructed the water system according to plans prepared and submitted by the plaintiff. It appeared in the evidence that the minutes of the defendant did not contain any appropriation for waterworks and sewer department to cover surveying and engineering work by the plaintiff, and that no appropriation had been made by the defendant for paying the plaintiff. The evidence further tended to show that the fiscal year of defendant for 1922 ended 30 April, 1923. At the conclusion of plaintiff's evidence the defendant moved for a judgment of nonsuit, which was granted by the court, and the plaintiff appealed.

*McLendon & Hedrick and A. A. Whitener for plaintiff.*
*Self & Bagby and Bailey Patrick for defendant.*

BROGDEN, J. The defendant seeks to uphold the judgment of nonsuit upon two grounds: (1) The charter of the defendant provides that "no contract shall be binding upon the city unless it has been signed by the city manager and by a member of the city council, who shall have been duly authorized to sign the said contract by an ordinance adopted at a

regular meeting of the city council," etc.   (2) The restriction upon the exercise of municipal powers contained in 3 C. S., 2960, subsection (d), is as follows, to wit: "Enter into any contract involving the expenditure of money unless a sufficient appropriation shall have been made therefor, except a continuing contract to be performed in whole or in part in an ensuing fiscal year, in which case an appropriation shall be made sufficient to meet the amount to be paid in the fiscal year in which the contract is made."   In determining the merits of the first proposition, it appears that section 7 of the charter of defendant, enumerating the powers of the city manager provides as follows: "He shall sign all contracts  .  .  .  as the city council may authorize and require."   Section 13, subsection (d) of the charter, enumerating the powers delegated to the city council, provides: "It shall make or authorize the making of all contracts, and no contract shall bind or be obligatory upon the city unless made by ordinance or resolution adopted by the city council, or reduced to writing and approved by said council or expressly authorized by ordinance or resolution adopted by the city council."   It is the plain intent and meaning of the sections of the charter referred to that all contracts shall be authorized by ordinance or resolution of the city council or approved by said council.   In the case at bar, the resolution or ordinance employing the plaintiff was duly adopted by the governing body of defendant, reduced to writing and duly approved in regular session assembled.   The contract was signed by the city manager, the chief executive officer of the city, under the provisions of the charter. Under these circumstances the failure of a member of the council to sign the contract with the city manager was no more than an irregularity or informality, which in nowise vitiates the contract if otherwise valid.

The more serious question presented by the record relates to the construction of 3 C. S., 2960, subsection (d).   The Municipal Finance Act expressly repeals all acts, general, special, private or local, relating to bonds or other obligations of a municipality.   So that the provisions of the city charter of defendant, with respect to its fiscal obligations, are superseded by the Municipal Finance Act.   Subsection (d) of 2960, expressly prohibits a municipality from entering into any contract involving the expenditure of money unless a sufficient appropriation shall have been made therefor, unless such contract be a "continuing contract."   A continuing contract under the law is expressly excepted from the operation of said subsection (d).   The vital point in the case, therefore, is whether or not the contract was a "continuing contract" as contemplated by law.   A definition of a "continuing contract" depends largely upon the facts of particular cases.   In *Novelty Co. v. Andrews,* 188 N. C., 59, the question of "continuing guaranty" was considered by this

Court. Of course, a guaranty is a contract of a particular nature. *Clarkson, J.,* quoted with approval the following principle of law: "Where by the terms of the guaranty it is evident that the object is to give a standing credit to the principal to be used from time to time, either indefinitely or for a certain period, it is generally deemed a continuing guaranty. . . . If the object of the guaranty is to enable the principal to have credit over an extended time, and to cover successive transactions, it is a continuing one." The governing principle in such contracts is *successive transactions between the parties over a definite or indefinite period of time.* So in the present case, the contract between the parties contemplated successive transactions over an indefinite period of time. Indeed, the statute itself defines "continuing contract" as contemplated therein. Such a contract is one "to be performed in whole or in part in an ensuing fiscal year." The Municipal Finance Act provides that the fiscal year of every municipality shall begin either on the first day of June or the first day of September, as the governing body may determine. It appears, however, from the present record that the fiscal year of defendant began on 1 May and ended 30 April. The contract was made by the defendant on 12 December, 1922. Hence this contract was made during the fiscal year and no appropriation could possibly have been made for the work in the budget which the law required to be presented not earlier than one month before nor later than one month after the beginning of each fiscal year. On 25 October, 1923, when the plans were ready to be submitted to the defendant another fiscal year had ensued. On 4 October, 1924, when the plaintiff rendered its bill for services, still another fiscal year had ensued. The evidence introduced at the trial was to the effect that the completion of the improvement would have required a period of eighteen months to two years, not including the time requisite for making preliminary studies, investigations, maps, sketches and detailed plans to be submitted to bidders. Obviously, under these circumstances, the contract in controversy contemplated the performance of services extending over a period of more than one fiscal year. Therefore, if the contract existing between the plaintiff and the defendant was a continuing contract, the failure of defendant to make an appropriation for the fiscal year 1922-23 did not affect the validity of the contract, for the reason that a continuing contract is expressly excepted from the operation of the restriction set forth in subsection (d), *supra.* In the event of a continuing contract the law expressly required the defendant to make an appropriation to meet the indebtedness so incurred.

Upon the present record we hold that the trial judge was in error in sustaining the motion of nonsuit, and said judgment is

Reversed.